IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 12-cv-00395-RPM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SG INTERESTS I, LTD.,
SG INTERESTS VII, LTD., and
GUNNISON ENERGY CORPORATION,

    Defendants.

---

ORDER DENYING MOTION FOR ENTRY OF FINAL JUDGMENT

---

    The United States of America through the Antitrust Division of the Department of Justice ("DOJ") filed this civil antitrust action against Gunnison Energy Corporation ("GEC") and SG Interests I, Ltd., and SG Interests VII, Ltd. (collectively, "SGI") on February 15, 2012. In the complaint, the DOJ alleges that these competitors in the exploration and development of natural gas resources in the Ragged Mountain Area ("RMA") of Colorado violated Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1 by collusion in bidding on federal lands offered for lease by the Bureau of Land Management (BLM) in April and May, 2005. It is alleged that the parties had agreed in a Memorandum of Understanding ("MOU"), as of February 8, 2005, that SGI would submit bids as nominee for both parties and, if successful, assign a 50% interest in the acquired leases to GEC, at actual cost, and then the parties would agree to a development plan in a joint venture.

1

Accordingly, only SGI submitted bids and acquired four leases which the DOJ alleged resulted in the government receiving substantially less revenue than it would have had SGI and GEC competed at the auctions. The relief requested under Section 4 of the Sherman Act, 15 U.S.C. § 4, and Section 4A of the Clayton Act, as amended, 15 U.S.C. § 15a, is a declaration that the MOU constitutes an illegal restraint of trade in violation of Section 1 of the Sherman Act and that the government be awarded treble damages for the losses incurred as a result of the defendants' conduct.

Filed with the complaint was a stipulation by the parties with a proposed Final Judgment to be filed by motion at any time after compliance with the Antitrust Procedures and Penalties Act, ("Tunney Act"), 15 U.S.C. § 16.

The DOJ also filed a Competitive Impact Statement, ("CIS"), as the Tunney Act requires. It gives the following explanation of the proposed final judgment:

### III. EXPLANATION OF THE PROPOSED FINAL JUDGMENT

> The proposed Final Judgment relates to a *qui tam* action captioned *United States ex rel. Anthony B. Gale v. Gunnison Energy Corporation, et al.*, Civil Action No. 09-cv-02471-RBJ-KLM (D. Colo.), and settlements with the United States Attorney's Office for the District of Colorado. Both this action and the *qui tam* action arise from common facts related to BLM auctions in February 2005 and May 2005 and the anticompetitive MOU.
>
> For violations of Section 1 of the Sherman Act, the United States may seek equitable relief, including equitable monetary remedies. *See United States v. KeySpan Corp.*, 763 F. Supp. 2d 633, 638-641 (S.D.N.Y. 2011). Further, where the United States is an injured party by a Section 1 violation, it may seek damages. 15 U.S.C. § 15a.
>
> The proposed Final Judgment requires GEC and SGI to each pay $275,000, for a total of $550,000, to the United States within 10 days of entry of the Final Judgment pursuant to instructions provided by the United States Attorney for the District of Colorado. These payments will satisfy claims that the United States has against GEC and SGI under Section 1 of the Sherman Act, as alleged in this action, and the False Claims Act, as set forth in the separate agreements reached between GEC and SGI and the United States Attorney's Office for the District of

Colorado (which are Attachments 1 and 2 to the proposed Final Judgment).[1]

As a result of the unlawful agreement in restraint of trade between GEC and SGI, the BLM received lower bid payments. The payment of damages to the United States reflects the likely additional bid revenue that the BLM would have received had SGI and GEC acted as independent competitors at the February and May 2005 auctions. Requiring GEC and SGI to pay damages in these circumstances will protect the public interest by deterring them and other parties from entering into similar anticompetitive agreements in the future.[2]

Attached to the Stipulation are two proposed settlement agreements: (1) a settlement agreement among the Government, SGI and Anthony Gale, and (2) a settlement agreement among the Government, GEC and Gale. (Doc. #4, Attachments 1 & 2). Each agreement recites the allegations of the Qui Tam Complaint, as the conduct covered by the Settlement Agreements. (Settlement Agreement, Recitals at ¶¶ A-B). The Settlement Agreements provide that SGI and GEC will each pay $275,000 (the Settlement Amount") to the Government.

In the SGI agreement, the Government is to pay Relator Gale a share of $41,250.00 and legal fees of $25,000.00 from the $275,000.00 settlement amount to be paid by SGI and the GEC agreement provides for payment of $68,750.00 as Gale's share, plus $25,000.00 to William A. Cohan, as Relator's counsel, from the

---

[1] The proposed Final Judgment does not preclude the United States from bringing an action against GEC or SGI for any antitrust claims arising from their acquisition and operation of the Ragged Mountain pipeline, as agreed in the Stipulation at paragraph 4.

[2] In 2005, GEC and SGI paid bids totaling approximately $94,000 for the four leases they acquired pursuant to the MOU, resulting in an average per acre price of approximately $25. By paying an additional $550,000, GEC and SGI will have been required to pay approximately $175 per acre, seven times its initial bid amount.

3

$275,000.00 settlement amount to be paid by GEC. Thus, the Government's net recovery would be $390,000.00.

The False Claims Act case is pending before a different judge of this court and has been referred to a Magistrate Judge, *United States ex rel. Anthony B. Gale v. Gunnison Energy Corporation and SG Interests VII, LTD,* Civil Action No. 09-cv-2471-RBJ-KLM.

It was filed *pro se* by Anthony Gale, formerly vice-president of oil and gas development at GEC. He signed the MOU. In his complaint Gale alleged that GEC did not compete with SGI on 22 leases in BLM auctions from February 10, 2005, to November 9, 2006, and with each bid SGI falsely certified that it was not in violation of 18 U.S.C. § 1860, prohibiting collusion of bidders. There is no allegation as to the amount of the loss from the alleged lower auction prices paid for the 22 leases obtained by SGI. Treble damages are requested under 31 U.S.C. § 3729(a)(7). The Act provides for a civil penalty of not less than $5,000.00 and not more than $10,000.00.

The DOJ has complied with the publication required by the Tunney Act and has filed the public comments received, together with the Government's Response to those comments. (Doc. 17).

The function of this court under the Tunney Act is to determine whether the entry of the Proposed Final Judgment is in the public interest. 15 U.S.C. § 16.

The public comments may be grouped in four categories as follows:

(1)    <u>Comments of 72 individuals (Doc. ## 16-1, 16-2, 16-3)</u>

Many of the individuals assert that the Proposed Judgment is inadequate to cure the alleged violation. Several expressed the view that the proposed settlement

4

payments are nothing more than a "slap on the wrist" (see, e.g., comments of Lazaros Bountour and Brad Burritt). Some suggest the Government should revoke the leases in question and impose harsher penalties for the purpose of deterrence. (See, e.g., comments of Les Renfrow; Carol M. Shoonhoven, George Silby, and Michael Sramek). Some express concern about the Government's apparent unwillingness to punish entities owned and controlled by wealthy individuals. (See, e.g., comments of Mary Smith and Suzanne Watson).

Many commenters considered the Proposed Final Judgment to be unfair in comparison with the criminal prosecution and sentence of Tim DeChristopher, an environmental activist who interfered with an unrelated federal oil and gas lease auction in December 2008, in Salt Lake City, Utah. DeChristopher participated as a bidder and won approximately $1.8 million in bids that he had no ability to pay or intention of paying. DeChristopher was indicted on two counts: (1) falsely stating on a bidder registration form that he was a bona fide bidder in violation of 18 U.S.C. § 1001, and (2) participating in a scheme to interfere with the competitive bidding process of the sale of federal oil and gas leases, in violation of Chapter 3A of the Federal Onshore Oil and Gas Leasing Act, 30 U.S.C. § 195(a)(1). A jury convicted DeChristopher of both counts, and the district court imposed a sentence of 24 months' imprisonment, three years' supervised release, and a $10,000 fine. The United States Court of Appeals for the Tenth Circuit recently affirmed the conviction. The commenters are troubled by that perceived disparity.

These comments go beyond addressing the question presented. The DOJ's decision to pursue these defendants in a civil action rather than a criminal antitrust

prosecution is within the agency's discretion and not within the authority of this court to review.

Some individuals complained about the general conduct of defendants' oil and gas operations in Colorado. (*See, e.g.,* comments of Geoffrey Levens (expressing concern about the impact of oil and gas activities on local infrastructure, air quality, water quality, real estate values and tourism); *see also* comments of Elisabeth Bradford ("If the civil settlement goes through as planned, the gas leases will end up in the hands of companies that do not have a pristine reputation of stewards of the land.")).

Some express concern about the local activities of GEC's owner, William Koch, particularly Koch's efforts to exchange land he owns in Utah for BLM land adjacent to a ranch he owns in the Ragged Mountain Area. (*See* letter of Ed Marston dated April 17, 2012).

Two comment letters noted that an attorney who provides services for SGI also serves on a BLM advisory council. (*See* E. Marston letter dated April 17, 2012, and comments of Phyllis Swackhamer).

All of these concerns are not germane to the question now before this court.

(2) <u>Comments of a coalition of five environmental and public health groups (Doc. 16-4)</u>

A letter submitted by a coalition of five groups from across western Colorado, seeking to protect the natural environment and public health, states that the proposed settlement does not satisfy the public interest and does not adequately address the alleged collusion for four reasons: (1) the proposed settlement allows the defendants to retain the four leases at issue and does not debar the defendants from future auctions;

(2) the proposed settlement does not address the other eighteen leases that defendants acquired by allegedly illegal means, yet the proposed agreement absolves the defendants of wrongdoing associated with the acquisition of those leases; (3) the proposed settlement does not deter collusion and may encourage it; and (4) the proposed settlement "markedly departs" from the sanctions imposed on DeChristopher.

### (3) Comments of the Board of County Commissioners for Pitkin County (Doc.16-5)

The Board of County Commissioners for Pitkin County, Colorado ("County") submitted comments on the proposed settlement. The County states that it has an interest in these proceedings because:

> [T]his Ragged Mountain area includes lands located in Pitkin County.... According to BLM land records, SG has an interest in a total of 69 oil and gas leases in the Thompson Divide area, many of which are located in Pitkin County. The BLM is currently considering a proposal from SG to unitize several leases in the Lake Ridge area of the Thompson Divide. The plan would extend the lease term for 16 parcels owned by SG that are currently set to expire in 2013. If it is approved, the proposal would affect 32,000 acres of public lands, and would have a severe environmental impact on lands located in Pitkin County. The Lake Ridge leases are located near the Ragged Mountain leases; both are in the Thompson Divide....
>
> As companies like SG and GEC continue to pursue federal oil and gas leases in the Thompson Divide, Pitkin County has an interest in ensuring that this land is being acquired fairly and by entities that obey the law. The Board of County Commissioners for Pitkin County is an elected body that directly represents the public interest. It has a stake in seeing that oil and gas companies are not undermining and manipulating the market for federal leases by acquiring parcels at illegal cut-rate prices.... Pitkin County wants to ensure that this illegal conduct is punished appropriately so that potential offenders are deterred by being warned that the government will not tolerate this collusive activity. The government has an obligation to deter oil and gas companies from illegally acquiring and operating leases in Pitkin County.

(County comments at pp. 6-8).

7

The County asserts that the proposed settlement is too lenient to deter future antitrust violations. It emphasizes that bid rigging is a *per se* antitrust violation and the Sherman Act provides for treble damages. The County complains that the proposed settlement payments do not account for damages suffered by the United States for the other eighteen leases that were also subject to joint bidding (i.e., the other eighteen leases identified in the Qui Tam Action) and that the Government could have pursued additional claims under the False Claims Act, the Program Fraud Civil Remedies Act, the Mineral Leasing Act, the Mineral Leasing Act for Acquired Lands, and common law. The settlement releases the Defendants from liability for all of these potential claims.

The County asserts that a proper remedy would be treble damages for all 22 leases and debarring Defendants from future bidding for several years.

> The settlement should reflect the fact that the Defendants would be liable for treble damages in any antitrust lawsuit for all 22 leases. It should also account for the other federal claims that the United States has decided to include as part of the Defendants' broad release. Specifically, the DOJ should consider debarring Defendants' activities as lessees on federal lands in Colorado and debarring them from future bidding in Colorado for several years.

(County comments at p. 23).

(4) Comments of Scott Thurner (Doc. 16-6)

Scott Thurner complains that the proposed settlements do not address the anticompetitive impact of these defendants in their operation of a pipeline system in the area that was the subject of a private action, *Riviera Drilling & Exploration Co. v. Gunnison Energy Corp., SG Interests I, Ltd., and SG Interests VII, Ltd.*, Civil Action No. 08-cv-2486-REB-CBS, United States District Court for the District of Colorado. Scott Thurner was an officer of Riviera. In 2008, Riviera sued GEC and SGI, claiming they

unlawfully conspired to exclude Riviera from access to the Ragged Mountain Pipeline and other gas pipelines that GEC and SGI own in the vicinity. (*Id.*) Riviera alleged that the defendants restrained the production, gathering, processing, transportation and sale of natural gas from the Ragged Mountain Area in violation of sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, common carrier obligations under 30 U.S.C. § 185(r), and statutory and common law of Colorado. (*Id.*) Trial of that action was scheduled to commence on February 22, 2010. In January 2010, Riviera's counsel moved to withdraw. After that motion was granted, Riviera filed for Chapter 11 bankruptcy protection on February 2, 2010. The action was dismissed with prejudice on February 17, 2010, after Riviera was unable to obtain new counsel. On January 5, 2011, the United States Court of Appeals for the Tenth Circuit affirmed the judgment of dismissal in an unpublished order and judgment. *Riviera Drilling & Exploration Co. v. Gunnison Energy Corp., SG Interests I, Ltd., and SG Interests VII, Ltd.*, Case No. 10-1081 (10th Cir. Jan. 5, 2011) (unpublished).

The allegations made in the Riviera complaint are essentially the same that have been made by the plaintiff in *Buccaneer Energy Corp. V. Gunnison Energy Corp., SG Interests I, Ltd., and SF Interests VII, Ltd.*, Civil Action No. 12-cv-01618-RPM, a case now pending before this court.[3] Buccaneer alleges that it is a Nevada corporation. Anthony Gale is its president. It entered into a Lease and Purchase Agreement to purchase Riviera's assets in the Ragged Mountain Area but alleges that it is unable to go forward because GEC and SGI are excluding it from the pipeline system.

---

[3]SGI has moved to dismiss the complaint based on *res judicata*.

In its response to these public comments, the DOJ explains that although an agreement among competitors not to bid against each other generally is *per se* unlawful, a joint bidding agreement that is ancillary to a procompetitive or efficiency-enhancing collaboration may be lawful under the rule of reason. (Gov't resp. at 15). The Government states that after carefully analyzing the facts of this case, it concluded that the defendants' collaboration as to the 4 leases was a *per se* unlawful restraint of trade, but the defendants' agreements with respect to the other 18 leases was reasonably related to a broader, efficiency-enhancing collaboration between the two companies in their joint venture agreement expressed in the MOU.[4]

The Government defends the amount of the settlement payments as reflecting the additional revenues the BLM likely would have received if SGI and GEC had acted as competitors at the auctions in February and May, 2005. The Government states that if the case proceeds to trial, the calculation of damages would be heavily disputed and the monetary amount of the settlement accounts for litigation risks and costs.

### GEC Comments (Doc. 16-7)

GEC filed a statement responding to the public comments in a manner that demonstrates that this defendant considers this antitrust action to be meritless and the settlement to be nothing more than a payment to be rid of this nuisance. (Doc. 16-7). The unrepentant arrogance of this defendant is so self-evident that a copy of the statement is attached as Exhibit A. It is not in the public interest to approve a final

---

[4]This court recognizes that an agreement to conduct operations as a joint venture is not, in itself, a Sherman Act violation. The agreement not to bid competitively is a per se violation separately considered from the remainder of the MOU.

judgment that permits a defendant to leave its civil action in such a smirking, self-righteous attitude.

Combining these two actions in a single agreement is inappropriate and misses the point that the purposes of the statutes upon which they are based are different. The False Claims Act prohibits lying to a government agency to obtain a benefit.[5] The Sherman Act is for the protection of free market competition. As noted above, the actual amount of recovery for the combined settlement is only $390,000.00 given that $180,000.00 is to go to Anthony Gale and his attorney.[6]

There is no basis for saying that the approval of these settlements would act as a deterrence to these defendants and others in the industry, particularly as GEC considers "joint bidding" to be common in the industry.

In sum, the settlement of this civil action for nothing more than the nuisance value of this litigation is not in the public interest and any settlement of Civil Action No. 09-cv-02471-RBJ-KLM must be separate and apart from this case. It is

ORDERED that the settlement agreements are not approved and the Motion for Entry of Final Judgment (Doc. 18) is denied.

DATED: December 12th, 2012

BY THE COURT:

_____
Richard P. Matsch, Senior Judge

---

[5] It is not entirely clear that the False Claims Act has been violated by the false certification on the bid documents.

[6] The reasonableness of these payments is open to question but the *qui tam* action is pending before a different judge.

11

This comment is filed pursuant to 15 U.S.C. 16(b), by Gunnison Energy Corporation ("GEC"). GEC is one of the two defendants in this matter, and would not normally comment on the pending settlement to which it is a party, but because of the nature and content of the Department of Justice Antitrust Division (the "Division") press release, the spate of comments, press coverage and the false statements and impressions conveyed in those comments, compels GEC to comment.

GEC is a small, independent energy company that does business in Western Colorado in a responsible way and in cooperation with the local communities and regulatory bodies. It is a good and respected corporate citizen by all accounts other than certain isolated anti-industry activists. It values its reputation, which these activists have smeared, including with actionably defamatory publications.

First, the comments fail to understand that GEC has not been found to have violated any laws, including the antitrust laws. The Division investigated thoroughly every aspect of GEC's BLM lease acquisition activities from the company's inception to the present, and determined that with the exception of 4 leases acquired jointly with SG Interests in early 2005, GEC's activities were efficiency-enhancing and pro-competitive, and violated no laws. So the settlement pertains to 4 leases only, out of the dozens of leases acquired by GEC over its 10+ year history.

Second, GEC believes it can establish that as to some or all of those 4 leases there would not have been competitive bidding even if GEC and SG had not bid jointly. Thus, the BLM did not lose any revenue it otherwise would have received.

Third, joint bidding is common in the oil and gas industry, and is contemplated and even encouraged in the Mineral Leasing Act. SG and GEC agreed to acquire the 4 leases - as well as others that the government did not pursue - as part of a joint venture to develop wells and transportation facilities in the North Fork Valley. Joint ventures and joint bidding are recognized practices by the BLM and the antitrust laws, and GEC's conduct was consistent with all the applicable rules and laws.

Fourth, GEC agreed to settle the qui tam and antitrust cases for a single payment of $275,000, not because it engaged in any illegal or improper conduct, but because the cost of defending itself would far exceed the cost of settling.

Finally, it needs to be clarified that every dollar of GEC's settlement went to settle the qui tam lawsuit filed by the former GEC employee who negotiated and signed the agreement under which the 4 leases were acquired, and that gave rise to the litigation. The office of the United States Attorney for the District of Colorado received the entire settlement amount, and shared a portion of it with the whistleblower- former GEC employee who brought the qui tam case. The Division recovered nothing from the settlement unless some internal accounting was performed within the Department of Justice. So the 2-year investigation by the Division resulted in no recovery, which reflects the value of its claims against GEC.

The comments assert that GEC violated the antitrust laws. That is false. For the government to allege that in court filings is one thing, as such allegations are protected speech. To assert as fact

*Exhibit A*

those assertions in blogs, comments to the Division, newspapers and other publications is another. GEC agreed to the settlements of the antitrust and qui tam cases and believes that the settlements are in the best interest of all parties. For the government to expend significant taxpayer dollars to pursue a meritless claim over such a minor issue would be wasteful, and for GEC to vindicate itself fully would require it to devote focus and money far out of proportion to the issue involved, and which can be better used on its development project.

GEC supports the settlement, but stands ready to defend itself if the settlement is not approved.